1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT
9                   EASTERN DISTRICT OF CALIFORNIA
10
11   ROBERTY DRAWN, IV,                    No.  1:25-cv-00722-JLT-SAB (PC)
12              Plaintiff,                  FINDINGS AND RECOMMENDATION
                                           RECOMMENDING DISMISSAL OF ACTION
13        v.                               FOR FAILURE TO STATE A COGNIZABLE
                                           CLAIM FOR RELIEF
14   RONALD CASTONGUAY, et al.,
                                           (ECF No. 11)
15              Defendants.
16

17        Plaintiff is proceeding pro se and in forma pauperis in this action filed pursuant to 42

18   U.S.C. § 1983.

19        Currently before the Court is Plaintiff's first amended complaint, filed August 18, 2025.

20                                    **I.**

21                        **SCREENING REQUIREMENT**

22        The Court is required to screen complaints brought by prisoners seeking relief against a

23   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

24   Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

25   "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[]

26   monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B);

27   see also 28 U.S.C. § 1915A(b).

28
                                     1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of the screening requirement under 28 U.S.C. § 1915.

On February 28, 2023, Plaintiff had an MRI on his left shoulder which revealed a rim rent tear of the distal attachment of the supraspinatus tendon.

On August 14, 2023, progress notes, stated that Plaintiff was aware of the third request for left shoulder arthroscopy and is awaiting HLOC approval by CP&S/CMO.

In the later months of 2023, Plaintiff was taken to the Renaissance Surgery Center for consultation, at which time Dr. Ronald Castonguay "informed plaintiff of the surgery I would under[]go which was a Repair to Left shoulder Rotator." Dr. Castonguay went on to explain the operation which was to re-attach the tendons around the exterior of the rotator as it would be the only way to fix Plaintiff's problem. Dr. Castonguay informed Plaintiff it would take six months

1    to one year for Plaintiff to be fully able to go back to being able to perform old duties.  Plaintiff

2    agreed to have rotator repair.

3          On October 4, 2023, Plaintiff had surgery.  Plaintiff was questioned to be sure he agreed

4    to undergo with repair to rotator.  A decision was made to proceed with tenodesis and tendon

5    release using the VAPR.

6          From November 28, 2023 to October 17, 2024, Plaintiff received physical therapy that

7    caused severe pain to his left shoulder each time.  The therapist informed Plaintiff "something

8    other was going on that Plaintiff should be [f]urther along," and stopped the physical therapy.

9          A second MIR was performed on Plaintiff which revealed puss packets on the AC joint,

10    under the bone and bicep along with the original rim rent tears on the rotator.  Plaintiff was told

11    he had to go back and have another surgery to fix the original problem along with the problems

12    from the surgery performed by Dr. Castonguay because no rotator cuff repair was done.

13          On November 17, 2024, Plaintiff filed a health care grievance raising his claim that the

14    procedure performed was not authorized by Plaintiff nor was it discussed with him.  To date,

15    Plaintiff still suffers from the effects of the rotatory cuff injury.

16          After researching Dr. Castonguay, Plaintiff discovered that there have been several

17    instances of malpractice on his part in which a different procedure was performed other than what

18    was discussed and agreed upon.  Since the surgery Plaintiff still has limited motion and a lot of

19    pain.

20          On January 17, 2025, Plaintiff received the institutional response with a notation of no

21    intervention.

22          On February 12, 2025, Plaintiff sent the appeal for headquarters review.

23          On March 12, 2025, Plaintiff filed a complaint with the Medical Board.

24          On March 18, 2025, Plaintiff received a DUCAT to speak with Dr. Kollmorgan by video.

25    Dr. Kollmorgan stated he would fix the rotator cuff but could not fix the prior injuries.  On April

26    4, 2025, the surgery was performed in Clovis, California.

27          On June 11, 2025, Plaintiff received the headquarters response finding no intervention

28    was warranted.

1    Plaintiff brings claims for negligence and medical malpractice.  (ECF No. 11 at 7-8.)

2                                                **III.**

3                                          **DISCUSSION**

4    **A.    Deliberate Indifference to Serious Medical Need**

5            Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison

6    medical treatment, an inmate must show "deliberate indifference to serious medical needs."

7    Estelle v. Gamble, 429 U.S. 97, 104 (1976). In the Ninth Circuit, the test for deliberate

8    indifference consists of two parts. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal

9    citations omitted).  First, the plaintiff must show a serious medical need by demonstrating that

10   failure to treat a prisoner's condition could result in further significant injury or the unnecessary

11   and wanton infliction of pain. Id. (internal citations and quotations omitted.)  Second, the plaintiff

12   must show that the defendant's response to the need was deliberately indifferent. Id. The second

13   prong is satisfied by showing "(a) a purposeful act or failure to respond to a prisoner's pain or

14   possible medical need and (b) harm caused by the indifference." Id.  Indifference "may appear

15   when prison officials deny, delay or intentionally interfere with medical treatment, or it may be

16   shown by the way in which prison physicians provide medical care." Id. (internal citations

17   omitted).  However, an inadvertent or negligent failure to provide adequate medical care alone

18   does not state a claim under § 1983. Id.

19           "A difference of opinion between a physician and the prisoner – or between medical

20   professionals – concerning what medical care is appropriate does not amount to deliberate

21   indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891

22   F.2d 240, 242 (9th Cir. 1989), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d

23   1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122-23 (9th Cir. 2012)

24   (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986).  Rather, Plaintiff "must show that

25   the course of treatment the doctors chose was medically unacceptable under the circumstances

26   and that the defendants chose this course in conscious disregard of an excessive risk to [his]

27   health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks

28   omitted).)  In addition, "[m]edical malpractice does not become a constitutional violation merely

                                                4

1    because the victim is a prisoner." <u>Estelle</u>, 429 U.S. at 106; <u>Snow</u>, 681 F.3d at 987-88, overruled in

2    part on other grounds, <u>Peralta</u>, 744 F.3d at 1082-83; <u>Wilhelm</u>, 680 F.3d at 1122.

3        Plaintiff cannot show that Dr. Castonguay acted with deliberate indifference to a

4    substantial risk to his health or safety in determining and providing different surgery necessary to

5    treat his rotator cuff injury simply because he suffered from pain following the surgery.  Rather,

6    Plaintiff must set forth facts raising a reasonable inference that Dr. Castonguay must have been

7    aware at the time that he formed his opinion that the choice to proceed with surgery was

8    medically unacceptable and that proceeding with the surgery posed an excessive risk to Plaintiff's

9    health.  Indeed, it has been determined in this Court that where an inmate consents to surgery, but

10   later argues that they did not consent to the surgery actually performed, fails to show an Eighth

11   Amendment violation.  See <u>McRae v. Dikran</u>, 1:16-cv-1066 NONE-GSA-PC, 2021 WL 1670067,

12   at *7 (E.D. Cal. Arp. 28, 2021) (finding factual dispute regarding "what the surgeon did and did

13   not disclose, or whether the procedure as actually performed on Plaintiff went beyond his

14   consent" not sufficient to defeat summary judgment on plaintiff's Eighth Amendment claim);

15   <u>Lyons v. Traquina</u>, No. CV 06-2339 RT, 2010 WL 3069336, at *10 (E.D. Cal. Aug. 4, 2010)

16   (granting summary judgment in favor of defendants on plaintiff's Eighth Amendment claim even

17   though plaintiff argued that he did not consent to the surgery actually performed "plaintiff

18   undisputedly consented to a surgical procedure meant to alleviate pain in his shoulder").

19       Here, there are insufficient facts in the amended complaint to demonstrate that outcome of

20   the surgery suggests that Dr. Castonguay's recommendation or his surgery reflected a wanton

21   infliction of pain, or deliberate ignorance of a risk to Plaintiff's health and safety.  At most, as

22   Plaintiff presents in his complaint, his allegations against Dr. Castonguay are claims of

23   negligence or medical malpractice.  However, the Supreme Court has been clear that neither

24   negligence nor medical malpractice "become[s] a constitutional violation merely because the

25   victim is a prisoner." <u>Estelle</u>, 429 U.S. at 106.   Plaintiff's allegations in the first amended fail to

26   state a claim for deliberate indifference against Dr. Castonguay, and the Court concludes that

27   Plaintiff is not able to state such facts.  Indeed, as stated Dr. Castonguay's operative report of the

28   surgery performed on October 4, 2023, the preoperative diagnosis was "[l]eft shoulder rotator

cuff tear plus superior labrum anterior and posterior tear," and the following procedure was

performed:

> With the patient under a general anesthetic, he was turned into the lateral position. The left shoulder was no prepped and draped in a sterile fashion and placed on the traction of 10 pounds. An arthroscopic portal was now created posteriorly into the glenohumeral joint. Through the posterior portal, an anterior portal was established.

> Arthroscopic visualization of the glenohumeral joint revealed obvious tearing of the superior labrum extending into the biceps anchor. A decision was made to proceed with tenodesis and tendon release using the VAPR. Generalized debridement within the glenohumeral joint including the torn superior labral margin now undertaken until smooth transitions were obtained. The rotator cuff was visualized and no full-thickness tears identified. Arthroscopic equipment was now withdrawn from the shoulder and relocated into the subacromial space. Using a combination of a lateral portal and a posterior portal, wide bursectomy was now performed. Soft tissue was no peeled off the undersurface and released and the bur was directed from posterior to anterior. The anterior overhand of the acromion was removed. A smooth transition between the posterior to anterior was obtained along the acromion. The AC joint had obvious osteoarthritic changes. Using the bur, approximately 5 to 7 mm of distal clavicle excised. The rotator cuff was thoroughly examined and no full-thickness tears were identified. Arthroscopic equipment was no withdrawn from the shoulder. An incision was made between the anterior and lateral portal and carried down through the subcutaneous tissue, through the deltoid, and into the subacromial space. The bicipital groove was now identified. The biceps tendon was now retrieved, Bunnell sutured, and shortened. A 7 x 25-mm hole drilled into the bicipital groove. A tendon into this predrilled hole. At this point, the rotator cuff again fully examined and no full-thickness teras identified. The wound was now irrigated out well and closed using staples. Sterile dressings were placed. The patient was now awakened from anesthesia and estimated blood loss for this case was minimal.

(ECF No. 11 at 20-21.)

> In denying Plaintiff's inmate grievance at the institutional level, it was further noted that:

> On October 4, 2023, your medical records support you received orthopedic consultation and you underwent left shoulder arthroscopy. On October 5, 2023, your medical records support you received primary care provider evaluation. During this evaluation, the primary care provider documented recent left shoulder surgery, Tylenol w/codeine to be utilized as short-term pain management, avoidance to heavy lifting was recommended, and you would be scheduled for a follow-up with the orthopedic specialist. On October 23, 2023, your medical records support you received orthopedic consultation. On October 24, 2023, your medical records support you received primary care provider evaluation. During this evaluation, the primary care provider documented healed left shoulder per orthopedic notes and you were referred to physical therapy for further evaluation and treatment. On November 13, 2023, your medical records support you received orthopedic consultation. On November 27, 2023, your medical records support you received primary care provider evaluation. During this evaluation, the primary care provider documented

left shoulder healing without complications, light pain, and physical therapy appointments are pending.

(ECF No. 11 at 29.)  Plaintiff thereafter received physical therapy from approximately November 2023 to October 2024.  (Id.)  In November 2024, Plaintiff was examined by his primary care provider who noted myalgia in the shoulder region.  (Id.)  In December 2024, x-rays were performed in and an MRI was conducted in January 2025.  (Id.)  The simple fact that Plaintiff may have experienced some pain following the surgery does not demonstrate deliberate indifference on the part of Dr. Castonguay at the time he performed the initial surgery.  Based on the foregoing, it is clear that Dr. Castonguay performed procedures on Plaintiff's shoulder that he deemed medically necessary based on the actual status of Plaintiff's shoulder as determined at the point of surgery.  At most, Plaintiff has shown that he disagreed with the doctor's course of treatment, which does not give rise to a constitutional claim for relief.  Accordingly, Plaintiff has failed to state a cognizable claim for deliberate indifference against Dr. Castonguay.

### B.    Supervisory Liability

Plaintiff seeks to hold Chief Executive Officer Oscar Galloway liable for the actions and/or inaction of Dr. Castonguay.

Liability under section 1983 arises only upon a showing of personal participation by the defendant. "There is no respondeat superior liability under section 1983." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted).  A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations or knew of the violations and failed to act to prevent them. Id., see also Starr v. Baca, 652 F.3d 1202, 1206–07 (9th Cir. 2011).

Here, Plaintiff has failed to demonstrate an underlying constitutional violation by Dr. Castonguay.  Thus, there can be no supervisory liability claim as to Defendant Galloway. See, e.g., Jackson v. City of Bremerton, 268 F.3d 646, 653 (9th Cir. 2001) ("Neither a municipality nor a supervisor ... can be held liable under § 1983 where no injury or constitutional violation has occurred."); see also Guinn v. Sturm, 2011 WL 5508928, at *10 (E.D. Cal. Nov. 9, 2011) ("Because the undisputed facts establish that there was no underlying constitutional violation for

1    deliberate indifference to Mr. Guinn's serious medical needs, Sheriff Muller cannot be held liable

2    for his alleged failure in supervising Deputy Sturm and Officer Bigham").

3        Nor does Galloway's involvement in the review of Plaintiff's institutional level health

4    care grievance provide a valid basis for liability. Inmates lack a constitutional right to a specific

5    grievance procedure and there are no constitutional requirements regarding how a grievance

6    system is operated, even if a plaintiff believes the process to be unfair or not accurate. See

7    Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th

8    Cir. 1988). Thus, Defendants Galloway's role in Plaintiff's health care grievance process is not a

9    legitimate basis for liability under § 1983, even if Plaintiff believes that Galloway wrongly denied

10   his health care grievance. See Penton v. Johnson, 2019 WL 6618051, at *6 (E.D. Cal. Dec. 5,

11   2019) ("[m]oreover, a prison official's denial of a grievance does not itself violate the

12   constitution.... 'An allegation that a prison official inappropriately denied or failed to adequately

13   respond to a grievance, without more, does not state a claim under § 1983.' ") (quoting Evans v.

14   Skolnik, 657 F. App'x 285, 288 (9th Cir. 2015) (unpublished opinion)) (other citation omitted).

15        **C.      State Law Claims**

16        Plaintiff attempts to state a claim for negligence and medical malpractice. Each of these

17   claims arise under state law.  To raises such claims in this court, there must be a related federal

18   question present in the case. Shapiro v. McManus, 577 U.S. 39, 45-46 (2015). And claims that are

19   "wholly insubstantial" or "obviously frivolous" are insufficient to "raise a substantial federal

20   question for jurisdictional purposes." Id.; see also White v. White, 731 F.2d 1440, 1442 (9th Cir.

21   1984) ("Federal jurisdiction exists if a complaint claims a right to recover under the Constitution

22   and laws of the United States and the claim is not wholly insubstantial and frivolous").

23   Therefore, absent a viable § 1983 claim, the Court does not have the authority to adjudicate

24   Plaintiff's state-law claims.  Because Plaintiff has failed to set forth a cognizable constitutional

25   violation, the Court has no authority to consider Plaintiff's state-law claims.

26   ///

27   ///

28   ///

### D.      Further Leave to Amend

If the Court finds that a complaint or claim should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." (citation omitted). However, if, after careful consideration, it is clear that a claim cannot be cured by amendment, the Court may dismiss without leave to amend. Cato, 70 F.3d at 1105-06.

In light of Plaintiff's failure to provide additional information about his claims despite specific instructions from the Court, further leave to amend would be futile and the first amended complaint should be dismissed without leave to amend. Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile."). Here, Plaintiff's allegations fail to give rise to a constitutional violation, and Plaintiff has previously been given leave to amend.  Accordingly, further leave to amend the complaint should be denied.

## IV.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that the instant action be dismissed, without further leave to amend, for failure to state a cognizable claim for relief.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with this Findings and Recommendation, Plaintiff may file written objections with the Court, limited to 15 pages in length, including exhibits.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v.

Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **September 11, 2025**

STANLEY A. BOONE
United States Magistrate Judge